WRIGHT, J„ DISSENTING: When the Pike County Fiscal Court requested records from- ÚMG,' a privately-owned, for-profit Kentucky limited liability corporation, UMG replied to the request stating that, as a private entity, it was not subject to the Open Records Act. This case turns on this Court’s application of KRS 61.870(h). As that statute existed at the time of the request, it defined “public agency” to include “any body which derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds.” Since tíie litigation in the present case began, the General Assembly has amended the statute. The amendment specifically excludes funds “provided by a contract obtained through a public competitive procurement process” from consideration in determining whether a body is a public agency. UMG’s funds are obtained through such a competitive procurement process. Therefore, under the amendment, UMG would be excluded. This case turns on which version of the statute applies. The majority holds the pre-amendment version applies; however, I respectfully disagree and, therefore, dissent. While the statute does not explicitly provide for its. retroactive application, this Court has recognized an exception to the presumption against retroactivity. “[Sjtat-utory amendments that do not affect substantive rights, amendments often referred to as ‘remedial,’ do not come within the rule prohibiting retroactive application.” Moore v. Stills, 307 S.W.3d 71, 80-81 (Ky. 2010) (internal citation and quotations omitted). “[Statutory amendments that clarify existing law” are remedial in nature because “such amendments do not impair rights a party possessed when he or she acted or give past conduct of transactions new substantive legal consequences.” Id. at 81. Here, the General Assembly merely clarified its definition of public agency. The Legislature knew it needed to do so because of the ambiguity of the statute. In fact, Representative Johnny Bell (the amendment’s primary sponsor) even said as much during committee hearings on the amendment. He stated: What this legislation is attempting to do is to protect private industry, private entities. What is happening is there has been, what I feel 'like, a misinterpretation of the original legislation. If you read that legislation, it’s not very good. It’s not very well written, in my opinion as an attorney. It’s now been held by a Louisville judge [in Chilton v. M.A. Mortenson Co., Case No. 09-CI-027.49 (Jefferson Circuit Court, Div. 13 Nov. 24, 2009) ] to be all overbroad and vague.... I would have liked to have changed a lot of it, but because of the scrutiny, I decided not to. do that. So, we done a very minute. change, which in essence states that someone that goes through a public, competitive procurement process, that is already open to the public wholeheartedly, anyone can see that, any competitive bid in the state is open to the public.... So, we felt like, due to the Louisville judge’s holding and the disagreement with the interpretation that we needed to do some minute clarification to protect private entities. The Legislature was looking at cases in which a large, out-of-state company with a contract for close to $250 million with the state was not considered a “public agency” (and, therefore, not subject to open .records requests), while a smaller, in-state private LLC with a fraction of the revenue from local-government contracts would be subject to open up its books. This is an absurd result. But, by a simple clarification of the statutory language, the General Assembly could avoid it. This clarification did not impair the rights of the Fiscal Court. Rather, it merely provided a better frame of reference to the bodies to which the legislature had always intended the statute to apply. This only makes sense. The public competitive procurement process is already, as its name indicates, open to the public. What the public is doing with its funds through this process is not closed in any way—and the details surrounding said process are certainly available to the public through an open records request. However, the legislature never intended the books of the private companies engaging in the public competitive procurement process to be subject to such a request. The fact that the Act never so much as mentions private companies lends credence to this assertion. Because the Fiscal Court never had a right to these records, no rights would be impaired by the retroactive application of the amendment. Therefore, the clarification the General Assembly made to the Open Records Act was remedial in nature and should be applied retroactively. Furthermore, regardless of whether UMG was subject to the Open Records Act, the Fiscal Court’s request was over-broad. It requested “copies of [UMG’s] checks and all expenses since the. original contact [sic] between Mountain Water and UMG. It also sought “a list of expenditures including-- check ' number,, date, amount and payee for all checks written from January 7, 2005 to present.” In fact, the Fiscal Court’s own attorney admitted during oral that an overbroad interpretation could be given to the request. Contrary to the request, KRS 61.870(2) plainly provides: “ ‘Public record’ shall not iiiclude any records owned or maintained by or for a body referred to in subsection (l)(h) of this section that are not related to functions, activities, programs, or operations funded by state or local authority....” KRS 61.870(2). Therefore,- the request exceeded the parameters of the Act. For these reasons, I respectfully dissent. Cunningham, J., joins.